IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FIRST BANK OF CANYON CREEK, | § | |
| an affiliate of FIRST NATIONAL BANK | § | |
| OF CROCKETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 3:05-CV-2181-M |
| v. | § | |
| | § | |
| JOHN D. MEINTS, SHARON MEINTS, | § | |
| and JOHN D. MEINTS, JR., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court is Plaintiff's Motion for Leave to Reissue Summons and Serve Defendants, and the Motion to Dismiss filed by Defendants John D. Meints and Sharon Meints.[1] For the reasons set forth below, Defendants' Motion to Dismiss is **DENIED**, and Plaintiff's Motion is **GRANTED**.

**BACKGROUND**

Plaintiff First Bank of Canyon Creek holds two promissory notes executed by Beyond Property Management, Inc. ("BPM").[2] The First Note is dated November 17, 2003, and the Second Note is dated June 18, 2004. Both notes are in the original principal amount of $150,000.00, and both were guaranteed initially by Defendant John D. Meints, Jr. On March 2, 2005, the maturity of the First Note was extended by agreement to October 2, 2005, in exchange for the execution of Guaranty Agreements by Defendants, through which they guaranteed

---

[1] The Court shall refer to John D. Meints and Sharon Meints, collectively, as "Defendants." Defendant John D. Meints, Jr. is not implicated by either of the subject Motions or by this Memorandum Opinion and Order.

[2] The facts as alleged in Plaintiff's Complaint are taken as true for the purposes of Defendants' Motion to Dismiss.

payment and performance of the "Guaranteed Indebtedness." It is uncontested that the "Guaranteed Indebtedness" comprises, at a minimum, the First Note; whether it comprises any other debt is disputed by the parties. The First Note matured on October 2, 2005, and BPM allegedly defaulted on the Second Note on September 20, 2005. Plaintiff accelerated the Second Note on October 25, 2005, and now seeks, among other things, payment under both notes.

## MOTION TO DISMISS

Defendants move the Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, for lack of personal jurisdiction, and for insufficiency of service of process. FED. R. CIV. P. 12(b)(2), (5), and (6).

### *A. Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the complaint must be liberally construed in favor of the plaintiff, and all well-pled facts in the complaint must be taken as true. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). While a complaint challenged under Rule 12(b)(6) need not set forth detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" demands more than labels and conclusions: a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964–65 (2007) (citations omitted). Factual allegations must be sufficient to raise a right to relief above the speculative level. *Id.* In deciding a motion to dismiss, the Court does not evaluate a plaintiff's likelihood of success; the Court only determines whether a plaintiff has stated a legally cognizable claim. *United States ex rel. Riley v. St. Luke's*

*Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Defendants request dismissal on the theory that Plaintiff's Complaint seeks damages based only upon the alleged default in payment under the Second Note, and that they are guarantors only of the First Note. Plaintiff responds first that Defendants are liable under the First Note, which matured on October 2, 2005, and second that the Guaranty Agreements' definition of "Guaranteed Indebtedness" includes the obligations of the Second Note.

The Court finds without merit Defendants' assertion that the Complaint bases liability solely on the alleged default in payment of the Second Note. The Complaint states that the First Note matured on October 2, 2005, that "Defendants have failed and continue to fail to pay the amount of said [First] Note and the Second Note," and that Defendants are therefore liable under both notes. Therefore, the Complaint does not fail to state a claim against Defendants: it clearly alleges liability for failure to make payments on both notes.

A separate question exists, however, as to whether Defendants are potentially liable for the alleged default on the Second Note. The question turns upon construction of the Guaranty Agreements and, potentially, the contemporaneously-signed Loan Modification Agreement.

Under Texas law, the Court's primary obligation in construing a contract is "to ascertain and give effect to the intent of the parties as that intent is expressed in the contract." *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). This obligation includes determining in the first instance whether a contract is reasonably susceptible to more than one meaning, and is thus ambiguous, or whether it is susceptible to only one reasonable interpretation, and is thus unambiguous. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996). In considering whether ambiguity exists, courts must consider

"*the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original); *see also Clardy*, 88 F.3d at 352. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker*, 650 S.W.2d at 393.

In the instant matter, Plaintiff argues that the Guaranty Agreements' definition of "Guaranteed Indebtedness" includes all obligations, indebtedness, or liabilities that may arise or have already arisen between itself and BPM.[3] Defendants argue that the Guaranty Agreements, interpreted alongside the contemporaneously-signed Loan Modification Agreement, leave no doubt that Defendants are guarantors of the First Note only. The Court finds that the parties have not fully briefed the issue of ambiguity or the construction of the Guaranty Agreements, given that the dispute over the meaning of "Guaranteed Indebtedness" was first raised in Plaintiff's Response to the Motion. Thus, the Court declines to finally interpret the contracts at this time, pending further briefing by the parties. The Motion to Dismiss is **DENIED**. The parties may fully develop the issue and file appropriate papers with the Court. The parties will need to

---

[3] The first numbered paragraph of the Guaranty Agreements provide as follows:
> The term "Guaranteed Indebtedness," as used herein means all obligations, indebtedness and liabilities of Borrower owed to Lender, now existing or hereafter created, acquired or incurred, whether direct, indirect, primary or secondary, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, together with any and all renewals and extensions of such indebtedness, obligations and liabilities, *including, without limitation, the obligations, indebtedness and liabilities of Borrower under that certain Promissory Note dated of even date herewith in the principal amount of $150,000.00, signed by Borrower and payable to the order of Lender* and all interest accruing thereon and all attorney's fees and other expenses incurred in the enforcement or collection thereof. Guarantor acknowledges that the amount of credit which may be extended to Borrower and the amount of the Guaranteed Indebtedness which may be incurred by Borrower is unlimited, and that the amount guaranteed hereby is similarly unlimited.

(emphasis in original).

address the seeming tension between the apparently endless obligation imposed by the definition of "Guaranteed Indebtedness," and the suggestion that Defendants' liability would terminate following "the payment and performance in full of the Guaranteed Indebtedness."

*B. Rule 12(b)(2)*

Defendants argue, pursuant to Federal Rule of Civil Procedure 12(b)(2), that the Court lacks personal jurisdiction over them because the subject matter of the suit is the Second Note, and Defendants have no contacts with Texas relative to the Second Note. The Court has determined that Plaintiff's Complaint states claims based on both the First Note and the Second Note, and has left open the possibility that the Guaranty Agreements included the Second Note. Therefore, Defendants' argument is inapposite. Furthermore, specific jurisdiction exists over Defendants based on the Guaranty Agreements and the First Note. Specific jurisdiction exists "so long as the defendant purposefully established sufficient minimum contacts with the forum state and the plaintiff's cause of action arises out of or is related to those contacts." *Nayani v. Horseshoe Entm't*, No. 3:06-CV-1540-M, 2007 WL 1062561, at *5 (N.D. Tex. Apr. 10, 2007) (Lynn, J.). In the context of contractual contacts, the relevant factors are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)) (internal quotation marks omitted). Defendants do not contest the sufficiency of their contacts with Texas by virtue of the Guaranty Agreements and the First Note, and the Court finds no doubt as to the sufficiency of those contacts, as the Guaranty Agreements specify that performance is to occur in Texas, and is to be governed by Texas law. *See Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376,

382–83 (5th Cir. 2003) (finding sufficient minimum contacts where the defendant affiliated itself, through a contractual relationship, with an enterprise based primarily in Texas); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312–13 (5th Cir. 2007).  Neither do the facts of this case suggest that the exercise of specific jurisdiction would offend traditional notions of fair play and substantial justice.  *See Nayani*, 2007 WL 1062561, at *3.  Thus, Defendants' Motion to Dismiss under Rule 12(b)(2) is **DENIED**.

*C. Rule 12(b)(5)*

Defendants argue, pursuant to Federal Rule of Civil Procedure 12(b)(5), that the Court should dismiss Plaintiff's Complaint because service of process was insufficient.  Apparently conceding that service was insufficient, Plaintiff moves the Court to quash the service and allow Plaintiff to effect proper service, in lieu of dismissing the Complaint.  "[D]istrict courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process."  *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).

Defendants respond that the Court should dismiss the action rather than quash the service, for two reasons: (1) Plaintiff's improper service was willful, and (2) Defendants suffered actual prejudice as a result of the improper service.  Although the record before the Court demonstrates neglect by Plaintiff in the failure to properly serve Defendants, no evidence suggests that Plaintiff acted in bad faith.  Additionally, the Court is unpersuaded that Defendants were prejudiced.  Defendants claim that if they are found liable for the alleged debt at issue, it will be difficult for them to secure contribution and indemnity from the allegedly responsible parties, given the passage of time attributable to the failure to properly serve them.  Were the Court to dismiss this action for failure to effect proper service, the dismissal would be without prejudice.  *Id.* at 30 n.6.

Defendants' allegation of prejudice does not account for the fact that they may face precisely the same situation after Plaintiff re-files the action.  Additionally, Defendants have not demonstrated *actual* prejudice by, for example, detailing efforts to locate the allegedly responsible parties and explaining how those efforts have failed on account of Plaintiff's failure to effect proper service sooner.  Thus, Defendants' Motion to Dismiss pursuant to Rule 12(b)(5) is **DENIED**, without prejudice, however, to Defendants later seeking the costs and attorneys' fees incurred on account of the improper service.  The Court **QUASHES** the service attempted as to Defendants on November 8, 2005, and **GRANTS** Plaintiff's Motion for Leave to Reissue Summons, thereby retroactively permitting service by the summons reissued on May 18, 2007.

**SO ORDERED**.

July 18, 2007.

_____
**BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**